Okay, our next case this morning is number 141148, MasterObjects, Inc. v. Google Inc. Mr. is it Hosey, is that how you pronounce it? It is indeed, Your Honor. Good morning. May I please report, my name is Spencer Hosey. I represent the appellant and plaintiff below MasterObjects, Inc. in this appeal. Only the changes, this appeal reduces to those three words. The lower court's construction imposes a negative limitation on the claims here. The negative limitation specifically is that only one form of query transmission is proper. More specifically yet, that only the changes may be sent. More specifically yet, that one may never resend the same character twice. That is not what these claims say on their face. As a consequence, Google reaches to four other terms. It calls them related terms. They are respectively modify, lengthen, correspond, and form. And Google reads into each of these words one particular and specific mechanism of accomplishing the goal. It says, modify means just one form of modification. Specifically send only the changes and the server will glue those together in the backend. It says that lengthen means again, send the changes and glue those changes together at the server side. What language and specification do you contend supports your interpretation? Your Honor, column 20, lines 10 through 15, this is deep in the weeds of the preferred embodiment called the quest object system. The quest object system is described at great length and explicitly as an embodiment. That language says that when the user types, it's called a character event. But isn't that relevant to the embodiment? It is relevant to the embodiment, absolutely, Your Honor. That's not the claim. It is not the claim. That's the embodiment that they are using as an example, right? Exactly right, Your Honor. That is an enabling embodiment. It's so stated in the specification time and time again. What Google is doing is taking one baroque little detail of the enabling embodiment and reading it into the claims. I understand that argument and of course it does refer to the present invention, but I guess what I'm asking you is what supports you in the specification? Your Honor, column 20, line 10 to 15, it says in this embodiment you send, you type in, the entire string is in the input buffer and then it says you can send the input buffer or in the embodiment, if you like, the protocol can be set to send just the changes as opposed to the entire input buffer. The fact that that's a choice presupposes that there are other ways of doing it. It's one of many possible ways. It is not a mandatory way. Your view is that the claim should be read a little more ambiguously than the trial judge read it to cover both possibilities. Is that your position? That's what I get from your brief. Your Honor, I would hate to use the word read a claim ambiguously. I use that particularly because I wonder if your argument doesn't in effect say that this patent is indefinite and therefore invalid. We are sensitive to the indefinite tension here, but I don't think it is, Your Honor, and here's why. This is not a patent about query transition mechanics. These claims are agnostic on query transmission mechanics. That was never the point of patentful novelty. This is a patent about what is now colloquially known as instant search. It would never turn on how one exactly transmitted, lengthened, or formed. Never any pushback from the PTO. That was never the issue. If I read the written description in this case and hear the arguments that both sides are making, there's language going both ways, isn't there? I think in fairness that's true in the context of the preferred embodiment. Assuming there's language going both ways, why shouldn't it be assumed that probably the inventor never thought about the Google approach? The inventor thought about the problem of getting those individual additional letters back to the original. The inventor here wasn't focused on the mechanics of it. It is respectfully not master objects to prove that the claims cover this transmission mechanics. It is, I think, Google's to prove that this negative limitation, thou shalt not, is in the plain and ordinary language of the claims. And it's not. Lengthened means to make longer. It doesn't mean glue the changes together on the server. Modify means to change. Should we assume that what the trial court did here was claim construction? Your Honor, I think, in fairness to Judge Hamilton, I think she approached it perhaps backwards. I think she thought, the court may have thought, this is how this should work and then construed the claims accordingly. As against looking at the plain and ordinary language of the claims and saying, what would a person skilled in the art think this means? And that person would look at first the invention. They would look at the preferred embodiment under Phillips. They would look at the entirety of the patent. Well, looking at the entirety of the patent, coming back to that language, I'm not quite understanding why you think that language in column 20 helps you. Well, obviously, it's Google's favorite language. They love the protocol and support. But that comes after a sentence that says, then the input buffer is sent. That's line 10. And just the changes language is followed by, for this reason, the protocol messages include without limitation. Include without limitation. But is there any language in the specification that talks about resending the whole string? Yes. I believe, in fairness, there is. Where? It's in the use of the word string itself. The natural and ordinary reading of the word string as in query string. But don't just give me a word. Show me where in the specification there's language that supports the view that this includes sending the whole string. Well, if I may, let's start with the language of claim one itself. No, I'm asking for the specification. So throughout the specification, it talks about the invention sending a lengthening string. A lengthening string does not suggest of its own that you're sending just disparate fragments to the additional characters. I think the ordinary reading, Your Honor, of that phrase, lengthening string, would be the actual lengthening string. So Google's taking white and saying it means black because of these four related words. It is imposing a limitation on the claim that is not fairly supported by the language of the claim. Google does not argue that there's disavowal or disclaimer here. Here's your problem. Look at column eight, line 28. It says in the written description, the very beginning of the written description, it says information database search and retrieval system for sending a character-by-character string of data to an intelligent server. Character-by-character, which sort of defines what a string is. A string is not a group of characters, but a character-by-character transmission. What are we to do? A string consists of a series of characters, and why is that? That's how people type. Inherently, the level of granularity is character-by-character. You type, and the question is, what gets transmitted? A character or a bunch of characters? Respectfully, not quite, Your Honor. You didn't find, in response to Judge Dyke's question, you didn't give us a very clear statement where it says a string consists of a bunch of characters glued together. It doesn't say glued together. It just says send a string. Send a string. And what does a string mean? Here, you type the characters. The entire string goes into the input buffer on the client. That's clear in column 20, line 10. And you can send either the entire input buffer or not. Here's what the trial judge said. The claim goes on to state that each of the corresponding consecutive queries lengthens the string, and that the lengthening string is modified at the server. If plaintiffs were correct and a new full string was resent every time, the string would not be lengthened or modified. It would be replaced. What's wrong with that? Here's what's wrong with that, Your Honor. If I write a book and send it to my publisher and then send him another version of the book with a couple chapters added on the end, have I not modified the draft? Have I not lengthened the draft? That mechanism is encompassed in the plain and ordinary meaning of these claims. And as Google is to prove that, this kind of query transmission is barred by this negative limitation. It's simply not what the claims say. The prosecution history is absolutely to the contrary. It went from a single character to a string. That broadens the claim, doesn't narrow it. And if I may, if the inventor here truly intended this patent to turn on sending just the changes, why wasn't that said? That was never the point of novelty, never the point of distinguishing prior art. It's not what this patent is about. This is a patent about instant search, not mechanics of one particular flavor of query transmission. Google is unfairly caverning the claims by reading an embodiment in it, which is exactly what it protests not to be doing. I can see I've run long. Is there some time for reply? Okay, surely. Thank you. Thank you very much. Surely you will save me some of your time. Mr. Bagatelle. May I please record Dan Bagatelle on behalf of Google with me as Jonathan Waldrop. Master Objects is seeking a construction, actually a non-construction of the additional characters terms that is not supported by the claim language. It has no support in the written description of figures. It's contrary to the prosecution history and the inventor's own conception of the invention. I think I'd like to start just where Mr. Hosey left off. Why don't you tell me exactly, precisely what is the language in Claim 1 that you believe implicates transmission of only the modified characters? Sure. I'm happy to talk about any of the claims. I think their best case is probably Claim 1, so let's talk about that. It talks about entering consecutive additional characters and the client then sends corresponding consecutive queries to the server. Each of those lengthens the string by the additional characters and thereby forms a modified string for searching the database. What that's saying is that you need to send the additional characters or corresponding query that reflects the additional characters. You then add those characters to the existing string and you form a modified ever lengthening string. It doesn't talk about resending. If you wanted to talk about resending the string, you just require matching the string at the server with the string at the client. Is it the word form? What precisely is it? Because I don't think the language is quite a model of clarity. Is it the word form? You think if they were sending the full lengthened string rather than just the additional characters to be added to the old string or modifying the old string, that it wouldn't then be forming a lengthened string? I think it's actually there's forming, the modifying, and the lengthening all support the same conclusion. Actually, if you looked at two of the other claims, 44 and 45, they make it even clearer. They talk about together forming. It can't be the curl that it could be the word lengthening, right? Because suppose the claim had said and then you send a lengthening string. Well, you know, I mean, so I don't know that the word lengthening... That alone, perhaps that alone, because if it just said send a lengthening string, perhaps that might be agnostic as to how do you send the lengthening string? Do you resend it in its entirety or do you send it bit by bit? But the point is that it talks about modifying the string, not replacing it. It talks about lengthening it by the corresponding queries, the additional characters. You wouldn't even be talking about the order of consecutive additional characters. So would claim one talk about modifying? Yes, it modifies and forms an ever-lengthening string. Where is modifying language? Oh, it's actually in the server object. In response to receiving? Yes. The queries modify, the consecutive queries, each of the consecutive queries, each of the consecutive queries modify the lengthening string. So you don't just take... You need to take each of them and amalgamate the queries that are sent over. In fact, as I was pointing to 44 and 45, they talk about together forming. You don't together forming... If I do a search for Chief Judge Prost and I send over C and then CH and CHIE, those together don't form Chief Judge Prost if I'm doing that search. To get to... They make a point about the corresponding characters... Excuse me. The corresponding consecutive queries don't have to be identical. That's true. The spec talks about sending over perhaps a command that says append T to the end. It talks about unicodes which can correspond to the character T. It talks... You could send it over an encrypted form. But you need to send over the information corresponding to the additional characters that have been entered and you modify the string. It doesn't talk about replacement. And why is that? I think you have to keep in mind the context of the invention here. What is central to the invention is this session environment. The session environment you have one client talking to one server. The server already knows what the client has sent. There's no reason to send the additional characters and you don't want to send them because it just chews up bandwidth. That's exactly what the named inventor said. The point is you send just the changes because you want to have these two talking a lot and sending information back and forth and if you send in all the additional information it just clutters it up and chews up bandwidth. That's what the claim language is reflecting here. Your view is the plain language of the claim only affords one possibility which is sending the additional characters and then causing a modification of the string that lengthens it. I get it. Why don't you respond if you would just because the only precise point in the spec that he really pointed us to was column 20. You don't need to talk about the to support this sentence. Clearly that favors your position which is that this was an invention directed to and disclosing the ability to send a portion of or just the changes to. What about the preceding sentence which is the one he pointed to? Why isn't that preceding sentence tantamount to whether it's covered by claim one or not why isn't it tantamount to disclosure of sending the full string? Well, I think the preceding sentence tells you what you're going to do and then the sentence that we talked about from 10 to 15 tells you how you're going to do it. If I may, I'd be happy to march through the entire specification because this is just one of the portions of the spec where it talks about how you send it. No, but it precisely responds to that sentence if the results are not found in Go ahead and respond to that sentence because it says to send the new input buffer. His argument is that means you're going to send the whole string. Right, but I think what they're talking about is that's what you want to do. You need to make sure that the string at the server matches the string that's been entered into the client and then it talks about how you do that. Again, the abstract column 8 right at the beginning of the detailed description they all talk about it as sending a character by character string. Admittedly, it doesn't have to be a single character. It can be a couple of characters if you type quickly or if you paste something into the input buffer. But throughout it talks about that. If you look at figure 4 where we have sending the string A, B, C it sends A and then it adds B and then it adds C. It never sends A, B, C. Figure 6, the same thing. It seems to me, counsel, that Judge Moore points out the problem with your case which is that a creative or whatever trial judge could have cherry-picked through the written description and the claims and come out with exactly the opposite conclusion and found enough in that document to do that. Wouldn't you agree that there's enough language if you want to choose and pick? No, I don't think there is sufficient written description support for the construction that they're advocating allowing sending the entire string each time. I think it's clear from the specification. I think the plain language, at least I'm ahead in the plain language you may not buy my argument that it's dispositive but I think why would you have all the language in there with modify, lengthen the string, form the string from those queries that reflect the additional characters. So I think the language of the claim, I'm certainly ahead on and in the specification, the only thing it ever describes is sending it character by character and only sending the changes. I don't think there's anywhere in the spec where it ever says send more than the changes. There's not a single example in there. The prosecution history is the same. It never says the negative either. Well, no, what it says is it sends, it talks repeatedly about it being a character by character and sending, modifying the existing string. It does not talk about replacing the string. The example he's giving about rewriting the novel, first of all, we're not talking about a novel, but if you are, if you save a document as a new document, you're saving it as a different document. If you're modifying a document, you're making a change to that document, a small change to actually a Supreme Court case. A lot of conversation about the plain meaning of that phrase. This is actually just claim construction, isn't it? This is claim construction. Saying it's plain meaning this way or plain meaning that way doesn't help us at all. Well, I think this is a standard Phillips scenario where the whole patent is not a model of clarity, but I think clearly the better reading of the claims is that you're sending over additional characters that are then added to the string. Is that sentence that Judge Moore was focusing on, is that describing sending an entirely new query or is that particular sentence talking about sending additional characters to add to the string? Well, it's a little bit ambiguous on its face. If you take a look at the flowchart at 611, it may help. Page 611. 611 is Figure 6A. It's saying, it's referring to Figure 6A. No, I'm sorry. It's Figure 6A. It's Sheet 7 of 17. Yeah. JA 73. Joint Appendix 73. Yes. And what it's talking about is... So, which number are we looking at here? 611. Box 611. 611. That's the flowchart I was referring to. And it talks about sending the input buffer change message. That's what they're talking about here, sending the changes. And then when they go on to discuss exactly how they're going to do it, they make clear that what you're trying to do is to send the changes and not send the whole string. Would this be quite different if it said the input buffer changed message? I don't think it would be materially different. I think it would be a little dramatically awkward. You would say an input buffer changed message. Sending the input buffer the full message that was changed. Wouldn't that be... Wouldn't that be disclosing what he says? Yes, if you said, send the input buffer with the full message that was changed. But what we have here is send the input buffer change message. And it's exactly what they've shown before in Figure 4 and what they describe in the very next sentence, talking about sending the changes. Well, furthering Judge Dyke's question about is that first sentence really dealing with the sentence I pointed to, the one that President Counsel pointed to, I mean, doesn't the to support this language pretty clearly indicate that it's explaining how it's going to do what it said in the previous sentence should be done? I believe it is saying how we're going to do it and how are we going to do it. We're going to send just the changes, not the entire input buffer. So I think fairly read. It's fully supportive. Again, you're trying to address... That first sentence is taken out of context or could be argued to potentially stand for what the appellant suggests. But when the second sentence says to support this, to cause it to happen, to allow it, to permit it, to do it... To enable it. I mean, it does say... He points to the words to allow, but allow is a word that often means to enable, not just to permit it. And I think in context what we're reading here is this is how we do it. This is how we're enabling. That's what specifications do. They enable. And it's telling you how to do it. Is there something to the fact that that next sentence also includes the present invention language? I certainly think so. They knew how to distinguish between an embodiment and the present invention. We've had a lot of cases lately that have focused on the significance of using that language. Yes. And certainly the present invention is an indication that they are trying to define the scope of their invention. At a minimum, it's fully consistent with everything else we've explained. In the last minute or so, I think I'd like just to turn briefly to the prosecution history because that was a big focal point of their brief. Obviously, the prosecution history cannot expand claim scope, but in any event, it's fully consistent. We've gone through all of it in our brief, but I did want to respond to the Zimowski reference because I think it'll become very clear. If you take a look at JA 1014 to 1017, that's the colloquy we're talking about. In 1014, there's a discussion of the server acting when it receives each new character from the client. That's at 1014. That's not the portion that's Where is that on the page? It's about seven lines down. Okay. It's talking about whenever the server receives each new character from the client as the end user is entering characters into the client. So again, that's what they're talking about. They're talking about receiving each new character from the client, not the whole string. The portion Master Object wants you to look at is on page 1017. There they're referring to the growing string of characters. Again, talking about reading it in context. Please look at the preceding sentence. What they're talking about there Where is this on that page? This is the top paragraph of 1017. It's talking about the queries performed on the server. Unfortunately, this patent uses the word query to refer not only to what's sent from the client to the server, but also what the server sends to the database. There's a little ambiguity in the usage. But what they're talking about, the queries there, the consecutive queries containing the growing string of characters, those are the queries that are being performed on the database. So yes, that's the ever-lengthening string. That doesn't address how you get them. 1014 is where it tells you how you get them. You get them by getting the additional characters sent in. You used the phrase not sending the whole string. Does that appear anywhere in the document? Well, in that one spot on column 20. It says that. But I think our point is, yes, obviously, if you have a first character, you're going to be sending the whole string. It has to be, by definition, whatever the first one, you're going to be sending the whole string. The point is that they're not resending things that have already been sent. They're sending only the changes. That's a definitional question of what is a string. Well, the string, I think, is agreed that the string is the series of characters that are going to be used eventually to query the database. The string is in the server, and the question is what is being sent to the server. The whole string is in the server. It's in both places eventually. It starts out with typing in Chief Judge Prost on the client, and then eventually has to get to the server where it's going to query the database and come up with results for Chief Judge Prost. The question is how you get from one to the other, and do you resend the characters? In the server, the string is the complete string. That is the lengthening string. Yes, that is the ever-lengthening string that is used to query the database. And in your process, you also match the whole string in the client's computer as you go, right? And you send your version of the string at any given time. Google's system doesn't have a session environment, so the first letter or two may get sent to New Hampshire. Then somebody types in a few more letters that may go to a different server in Massachusetts. We don't have the same server talking to the client. So that server that gets that second or third or fourth or fifth set of information doesn't have the full information. Unlike in this invention where you have a session environment, there's a single server that knows everything that's been sent before. We have to resend the string each time. Your client has to resend the whole string, including the latest edition every time on your argument that it could go to any other server. And typically does. That happens to have efficiencies. You can have servers all around the world. It is not a session environment. It's not what they were talking about here. Thank you, Mr. Baggett. Mr. Hosea, you have two minutes here. Thank you, Your Honor. The specification never sends, thou shalt not resend characters already sent. That would be a pretty unusual specification. It would be, Your Honor. Here's why. It's not on the patent inventor to anticipate every non-infringement argument and draft around it. This is about the plain and ordinary meaning of the claims. They are reading in a negative limitation, and it's simply not there. If I may, let me give you an example closer to home. Let's assume someone said, Mr. Hosea, travel to the Smithsonian. I could walk. I could cycle. I could take a cab. I could call UberX. There's nothing inherent in the word travel that says, and you must do it in this particular mode. So too here. They're reading modify to mean something very specific and mechanistic. They're reading correspond to be identical to. A query corresponds to the additional characters only if it is those characters. Correspond means related to. Your Honors, yes. A lock corresponds to the key that unlocks it. A quote corresponds with its author. It does not mean identical to. And in fact, the language of Claim 1 uses correspond exactly as I just did. Queries and corresponding result sets. A corresponding result set is not identical to the query. So they are defining the word correspondingly, inconsistently within the confines of the same claim. All to support a mechanistic limitation on how this process works, on how I get from here to the Smithsonian. And that's not in the specification, and it's absolutely not in the claims. But their argument is that your inventor never really thought about their way of doing things. Just like 20 years from now, traveling from here to the Smithsonian, no one ever thought about minimizing their physical size and doing it in a drone. Because it wasn't available at the time. So if that invention comes up 20 years from now about how to travel from here to the Smithsonian, we would have a whole other problem about what you do when you make yourself small and go on a drone, wouldn't we? We call that the beam me up, Scali problem. Yeah, the beam me up problem. To answer your question, Your Honor, they absolutely are saying the inventor thought about it and prohibited it and limited the mechanism to sending just the changes. They're not saying the inventor didn't think about it. They're not saying the claims are agnostic. They're saying that there was an affirmative decision to write these claims to incorporate the thou shalt not negative limitation. That presupposes intent. They're not presupposing a lack of thinking about it. To the contrary, they're saying the inventor here very carefully said, we are going to do this one way and one way only. And they're saying that's in the plain and ordinary language of the claims. In fairness, would someone skilled in the art read claim 10529 and say, well, modify, lengthen, correspond. That means you have to send just the changes. You can't resend any characters more than once and you've got to glue it all together on a server. It is abundantly clear in this specification that the full growing strength is in the input buffer on the client side and mirrored, if you will, on the server. Two strengths. And I believe Google Counsel agrees with that. And they are imposing, again, not to be a broken record, but to be a broken record, they're imposing a limitation from the preferred embodiment into the claim. I understand the present invention language is significant. But in the context of this specification, present invention is used over 70 times to refer to what is explicitly defined as the enabling embodiment. Thank you, Mr. Hosea. Thank you very much. Thank both counsels. Please submit it.